IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS H. BROCK,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL ASTRUE, Commissioner of Social Security,<br><br>    Defendant.<br>_____ / | No. C 08-4829 CRB<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

    Plaintiff Thomas Brock ("Brock") asks this Court to review the Social Security Commissioner's decision denying his application for disability benefits under Title II of the Social Security Act. The Administrative Law Judge ("ALJ") concluded that Brock did not suffer from a severe impairment on or before December 31, 1998, the date Brock was last insured. Plaintiff now moves for summary judgment, arguing that the ALJ improperly discounted his testimony regarding the severity of his pain, failed to give proper weight to the opinion of his treating physician, and erroneously disregarded the testimony of lay witnesses. Defendant cross-moves for summary judgment, arguing that the ALJ's decision was supported by substantial evidence and was free of legal error.

    For the reasons discussed below, this Court affirms the ALJ's decision. The Court therefore GRANTS Defendant's Motion for Summary Judgment and DENIES Plaintiff's motion.

**1. Procedural History**

On August 1, 2003, Brock, a former self-employed automobile leasing agent, filed an application for disability insurance benefits under Title II of the Social Security Act. AR 93-95. In his application, Brock alleged a disability onset date of March 1, 1994. AR 93. He further stated that he was unable to continue his work as a loan officer due to, among other things, high blood pressure; circulatory problems; shortness of breath; borderline diabetes; back, neck, and left arm pain; arthritis; gout; hernia; severe headaches; post-operative penis pain; obesity; and depression. AR 106-114.

The Commissioner denied Brock's application initially and on reconsideration. AR 44, 52. Brock then requested a hearing before an ALJ, which was held on January 31, 2007. AR 511.

**a. The Hearing**

The ALJ began the hearing by noting that Brock had filed a Title II application only and that the date Brock was last insured was December 31, 1998. AR 513. Brock agreed that this information was correct. AR 513. As a result, Brock was required to establish that he was disabled on or before December 31, 1998. *See* 42 U.S.C. § 423(c)(1); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998) (to qualify for benefits under Title II, claimant must establish disability on or before the date last insured).[1]

To establish that he was disabled on or before the relevant date, Brock presented three forms of evidence. The first was his own testimony. AR 515-531. During that testimony, Brock stated that his severe health problems began after he was involved in three car accidents: one on January 9, 1995, one on April 16, 1995, and one on November 27, 1996. AR 514. According to Brock, he "couldn't do anything [after the accidents]" due to "severe pain" in his head and neck, "severe headaches," and "bad nerve pain" down his left arm. AR

---

[1] Brock maintains that he amended his onset date from March 1, 1994 to December 31, 1998. Plaintiff's Brief at 12. The Court agrees with the ALJ that there is no evidence in the record that shows that Brock amended his onset date. Moreover, Brock, his physician, and his lay witnesses all testified that Brock's serious medical problems began after his involvement in three car accidents, the last of which occurred two years before his amended onset date. In any event, Brock was required to establish that he was disabled on or before his date last insured, December 31, 1998, regardless of the onset date of his disabilities.

2

United States District Court
For the Northern District of California

1  516. He reported having trouble concentrating after the accidents and stated that he could

2  perform his work as an auto-leasing agent for no more than an hour without "lay[ing] down

3  or sit[ting] down for long periods of time." AR 520. In addition, Brock stated that his

4  injuries from the accident prevented him from exercising, which, in turn, led to substantial

5  weight gain and the onset of depression. AR 515, 517, 523, 534. Finally, Brock indicated

6  that he began to experience penile pain in 1998 (which he ascribed to his weight gain) and

7  that the pain necessitated surgery in November 1998. AR 517. As a result of these

8  problems, Brock stated that he "wouldn't have been able to do a day's work" in December

9  1998. AR 529.

10 In addition to his own testimony on the nature and severity of his impairments, Brock

11 introduced a voluminous medical history. AR 142-483. The bulk of that history, which

12 dates from July 1994 to January 2006, consisted of medical reports by Dr. Beverly Thomas,

13 Brock's primary care physician since the 1970s. Of particular relevance to this appeal,

14 Thomas opined, in a letter dated January 23, 2006, that

15 > In 1998, Mr. Brock was a mess. He had chronic pain with sitting, standing and walking. Recurrent upper extremity pain and numbness impaired his dexterity.
16 > Any prolonged activity exacerbated his pain. He had frequent headaches and was persistently tired. . . . His obesity impacted on all his problems. . . . . Mr.
17 > Brock's obesity also contributed greatly to the depression that affected him since his auto accidents. His accident and the resulting pain were the last
18 > straws for this gentleman who was struggling to keep himself in physical shape and who had associated himself with athletics throughout his life.
19

20 AR 268-69. Thomas concluded, "Given these problems, I do not believe that Mr. Brock had

21 the strength, stamina, or focus necessary to work even a 6 hour day on any regular basis in

22 December 1998 or at any time afterwards." AR 269.

23 Brock's final evidence in support of his disability claim were statements from four

24 lay witnesses. These witnesses were Jeffrey Manos, Brock's former attorney; Jerry

25 Sonnenberg, Brock's neighbor; Rajendra Parshad, a janitor at Brock's former office building;

26 and Michael Yeung, a former customer. AR 136-141. Though the statements differ in their

27 particulars, their central theme is that Brock's mental and physical health declined

28 significantly after the automobile accidents. AR 137 (Manos: "After the accidents, Thom

never seemed the same to me . . . . He appeared uncomfortable and fatigued, and seemed to be in genuine distress); AR 141 (Yeung: "[E]ver since his accidents, his demeanor dramatically went downhill. He is always complaining about pains in his body."); AR 133 (Parshad: "[In 1998, I] almost always found Mr. Brock lying on his couch. The expressions on his face indicated that he was in severe pain."); AR 140 (Sonnenberg: "Tom has seemed depressed since it became apparent that the ongoing pain would continue to stop him from moving freely or without pain and discomfort in his day-to-day activities.").

Following the presentation of Brock's evidence, the ALJ heard testimony from two appointed medical experts and a vocational expert. The first medical expert, Dr. Alan Coleman, testified that it was "hard . . . to find objective documentation" supporting the alleged severity of Brock's ailments and that, in his opinion, Brock did not suffer from a severe impairment on or before December 31, 1998. AR 539, 542.

The second expert, psychiatrist Thomas Singer, stated that there was "insufficient medical evidence" to establish that Brock suffered from a mental impairment prior to the date last insured. AR 545. Following Singer's testimony, Vocational Expert Nancy Rynd opined that an individual without severe physical limitations or mental impairments would be able to perform Brock's past work as a self-employed loan officer. AR 548-552.

### b. The ALJ's Decision

On March 4, 2007, the ALJ issued a decision denying Brock's disability claim. At step one of the Social Security Administration's five-step evaluation process, the ALJ found that Brock had not engaged in substantial gainful activity through the date last insured. Moving to step two, the ALJ concluded that Brock had the following medically determinable impairments: morbid obesity, hypertension, history of diabetes, history of penile surgery, cervical degenerative disc disease, hypertensive heart disease and hyperlipidemia. AR 22. He also found that these impairments "could have been reasonably expected to produce the alleged symptoms." AR 25.

Despite these findings, the ALJ ultimately concluded that the record did not support a finding that these impairments, in fact, "significantly limited [Brock's] ability to perform

4

basic work-related activities" on or before December 31, 1998.[2] AR 22.  As a result, Brock did not have a "severe impairment or combination of impairments" as of the date last insured.  AR 23.  In reaching this conclusion, the ALJ found Brock's statements "concerning the intensity, persistence and limiting effects of [his] symptoms" to be "not entirely credible."  AR 25.  The ALJ also gave less weight to Dr. Thomas's opinion on the severity of Brock's impairments because Thomas's "[contemporaneous] progress notes were inconsistent with her opinion, . . . her opinion [was] not supported by claimant's daily activities," and the opinion was inconsistent with other objective medical evidence.  AR 26.  The ALJ likewise discounted the statements of Brock's third party witnesses because those statements were "inconsistent with the claimant's activities" and "not supported by corroborative objective findings."  AR 27.

Brock appealed the ALJ's decision to the Social Security Appeal Council, which issued a decision denying Brock's appeal on August 22, 2008.  AR 44.  Brock now asks this Court to review the Commissioner's denial of benefits.

**2.     Standard of Review**

This Court will reverse an ALJ's decision to deny social security benefits only if the decision is based on legal error or unsupported by substantial evidence. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir.1989). The "substantial evidence" standard requires less than a preponderance but more than a scintilla; it demands "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  The Court must review the record as a whole, "weighing both the evidence that supports and that which detracts from the ALJ's conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995). Where the record is susceptible to more than one interpretation, this Court must uphold the ALJ's interpretation of it. *Id.*

**3.     Discussion**

The ALJ concluded that Brock's ailments were not severe, and hence did not qualify him for benefits. An impairment is "severe" if it significantly limits a claimant's ability to

---

[2] The ALJ acknowledged that Brock's symptoms have worsened since 1998. AR 25.

5

perform basic work activities for at least a consecutive twelve month period. *See* 20 C.F.R. § 416.920(a)(4)(ii); 61 Fed.Reg. 34,468, 34,469 (1996). An impairment "is considered 'not severe' if it is a slight abnormality[ ] that causes no more than minimal limitation in the individual's ability to function independently, appropriately, and effectively in an age-appropriate manner." 61 Fed.Reg. at 34,469.

Brock argues that the ALJ erred in three ways when he concluded that Brock's impairments did not significantly limit Brock's ability to do basic work. First, Brock maintains that the ALJ's failed to provide "clear and convincing reasons" for finding Brock's symptom testimony not entirely credible. Second, Brock argues that the ALJ improperly discounted the testimony of Brock's treating physician, Dr. Thomas. Finally, Brock contends that the ALJ failed to consider the entire record. In particular, Brock avers that the ALJ "improperly disregarded the substantial lay evidence" regarding the severity of Brock's impairments. Plaintiff's Brief at 7.

For the reasons discussed below, this Court finds that the ALJ's conclusion that Brock did not have a severe impairment is supported by substantial evidence. That evidence is highlighted by the clear and convincing reasons the ALJ provided for discounting Brock's testimony and the opinion of Brock's treating physician. Moreover, contrary to Brock's assertion, the ALJ considered the entire record, including the statements of Brock's lay witnesses, in reaching his decision.

### a. The ALJ's Adverse Credibility Finding

At the hearing, Brock testified that, due to his various impairments, he was unable to work for more than an hour at a time in December 1998 and "wouldn't have been able to do a day's work." AR 520. The ALJ found this and other similar assertions regarding the severity of Brock's impairment to be "not entirely credible," a conclusion that Brock challenges in this appeal.

Where, as here, a claimant has impairments that could reasonably be expected to produce the alleged symptoms and there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear

6

and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). These reasons must be supported by substantial evidence. *Thomas v. Barnhart,* 278 F.3d 947, 959 (9th Cir. 2002).

Here, the ALJ provided three clear and convincing reasons for rejecting Brock's testimony. First, the ALJ stated that "the extent of [Brock's] alleged limitations [was] not supported by objective evidence." AR 25; *See Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (holding that the existence of objective medical evidence in the record that contradicted complainant's subjective testimony was a clear and convincing reason to reject that testimony). The ALJ noted, for example, that, despite Brock's allegations of disabling neck and back pain following his car accidents, an April 1995 x-ray of Brock's neck showed no fracture or dislocation of the cervical spine, a March 1995 CT scan "showed no fracture [or] disc protusion" and "no definite evidence of right polyneuropathy or cervical radiculopathy," and an August 1995 MRI revealed only "moderate" and "mild" damage to Brock's spinal cord. AR 25, 145, 146. Moreover, the record contains no x-rays or other objective medical evidence that show that Brock's back, neck, and arm injures were severe.

Similarly, Brock's medical record from the late 1990s contains "no . . . psychiatric or mental health treatment notes" to corroborate Brock's allegations of severe depression. AR 26. These inconsistencies between Brock's testimony and the objective evidence "constitute significant and substantial reasons to find [Brock's] testimony less than completely credible." *Parra*, 481 F.3d at 750.

As an additional reason for discrediting Brock's testimony regarding the severity of his pain, the ALJ noted that Brock "received conservative treatment, and even though he reported debilitating pain systems, he was not prescribed severe pain medications." AR 26. "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra*, 481 F.3d at 751.

Brock maintains that the description of his treatment as "conservative" is inaccurate. Plaintiff's Reply at 8. He notes that his treatment included "80 doctor's visits, multiple physical therapy sessions, traction, aqua therapy, and non-narcotic pain medications." *Id.*

7

1  This argument fails for the simple reason that Brock's treating physicians themselves
2  described their treatment of Brock's back, neck and arm injuries as "conservative." AR 460
3  (Report of Dr. Baiz: "[W]e would indeed agree the best approach would be a continued
4  conservative one."). This "conservative" treatment included "cervical home traction" and an
5  Advil prescription. AR 460. Moreover, as the ALJ indicated, the record demonstrates that
6  Brock was not prescribed severe pain medications at any point prior to the date last insured.
7  Thus, the ALJ's finding that Brock's treatment for his alleged pain was a conservative one is
8  supported by the record.

9  Brock also alleges that the ALJ's finding with respect to the intensity of his treatment
10 was in error because the ALJ failed to consider whether Brock could afford more robust
11 treatment. Plaintiff's Brief at 14. This argument is unavailing. As the Commissioner points
12 out, Brock has been prescribed and continues to take multiple non-pain medications,
13 indicating that the cost of prescription medication has not been a primary consideration in his
14 care. Brock's lengthy medical history similarly demonstrates that access to care is not an
15 issue. Also, the reasons Brock's physicians gave for prescribing conservative treatment were
16 based on his condition, not on his inability to pay for more aggressive options. In short, there
17 is little, if any, evidence in the record that suggests that Brock's conservative treatment was
18 the result of his inability to pay for alternative treatments.

19 The ALJ's final reason for his adverse credibility finding was the inconsistency
20 between Brock's alleged limitations and his daily activities during the mid- and late-1990s.
21 AR 25; *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (noting that inconsistencies
22 between a claimant's alleged limitations and his daily activities are a legitimate grounds for
23 an adverse credibility finding). As the ALJ pointed out, treatment notes from a February
24 2000 medical examination indicate that Brock was "active" and "walking on a regular basis."
25 AR 196. The report also states that Brock was "work[ing] in finance" at the time. AR 196.
26 Brock himself testified that he did not close his office until 2000, more than a year after his
27 date last insured.
28

8

In addition, between 1994 and 1998, Brock frequently informed his treating physician, Dr. Thomas, that he was working and that he was feeling well. AR 26. During a visit in March 1997, for instance, Brock told Thomas he was "marketing his business [and] testing using telemarketing [for] new business." AR 172. He also informed Thomas that he was walking for an hour and a half every day passing out handbills. AR 172. Similarly, Brock reported to Thomas that he was "working on new aspects of [his] business" in July 1997 and that he "[felt] better about [his] business" in December 1997. In January 1998, he told Thomas that "[b]usiness had picked up." And in May he informed her that he was "doing okay." AR 156, 175, 261. Perhaps most notably, Brock reported in January 1999, one month after his date last insured, that he felt "entirely well." AR 444. In sum, the record contains substantial evidence in support of the ALJ's conclusion that Brock engaged in work and other activities during the relevant period that were inconsistent with the alleged severity of his disability.

In conclusion, the Court finds that the ALJ provided clear and convincing reasons for finding Brock's symptom testimony to be "not entirely credible." Those reasons were a lack of objective evidence corroborating Brock's testimony, the use of conservative treatment, and the inconsistencies between Brock's daily activities and the alleged severity of his impairments. Each of these reasons is supported by substantial evidence in the record.

### b. Opinion of Brock's Treating Physician

In 2006, Dr. Thomas opined that Brock lacked "the strength, stamina, or focus necessary to work even a 6 hour day on any regular basis in December 1998 or at any time afterwards." AR 269. The ALJ gave this opinion "less weight because . . . [Thomas's contemporaneous] progress notes were inconsistent with [the] opinion as they noted claimant was working and doing well, [the] opinion [was] not supported by claimant's activities and inconsistent with objective findings and the EMG study revealed no definite evidence for cervical radiculopathy." AR 26. Brock maintains that the ALJ's decision to give his treating physician's opinion less weight was improper.

9

"When a nontreating physician's opinion contradicts that of the treating physician – but is not based on independent clinical findings, or rests on clinical findings also considered by the treating physician – the opinion of the treating physician may be rejected only if the ALJ gives 'specific, legitimate reasons for doing so that are based on substantial evidence in the record.'" *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995)).  "Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." *Id.*

Here, Dr. Coleman, a non-examining physician, disagreed with Dr. Thomas's assessment of Brock's condition in December 1998. AR 538.  In Coleman's opinion, there was a lack of "objective documentation" to support Dr. Thomas's conclusion.  What little documentation did exist did not, in Coleman's view, establish that Brock's impairments were "severe." AR 539.

Given that Coleman's opinion contradicted Thomas's views, the ALJ was required to give "specific, legitimate reasons" for discounting Thomas's opinion that were based on substantial evidence in the record.  *See Morgan*, 169 F.3d at 600.  The Court finds that he did so here.

First, the ALJ noted that Dr. Thomas's 2006 opinion was inconsistent with her contemporaneous progress notes from the relevant time period.  As discussed above, Thomas frequently reported that Brock was working and engaging in other physical activity between 1994 and 1998.  In addition to the instances cited above, in November 1997, Thomas directed Brock to "change [his] work area to ergonomic," to walk daily, and to go to the gym. AR 261.  These directions indicate that Thomas believed Brock was working in late 1997 and that he was capable of engaging in physical activity at that point.  They also contradict Thomas's statement that Brock's auto "accident[s] and the resulting pain were the last straws" for Brock.  AR 268.  The third and final of Brock's auto accidents occurred in November 1996, a full year before Thomas indicated that Brock was still working and recommended that he partake in additional physical exercise.

Thomas's retrospective diagnosis is also undermined by the fact that she prescribed only conservative treatment during the period in question. She did not prescribe severe pain medication after Brock's automobile accidents. Nor did she refer Brock to a mental health practitioner even though he complained of depression and informed Thomas that he had stopped taking the anti-depression medications that she had prescribed.

In short, substantial evidence supports the ALJ's conclusion that Brock's 2006 statement regarding Brock's condition eight or more years earlier was not consistent with her contemporaneous notes. As a result, this finding was a legitimate reason to discount Thomas's opinion. *See Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995) (finding no error where the ALJ rejected a treating physician's opinion on the ground that the physician's "retrospective conclusion . . . contradict[ed] his own contemporaneous finding[s]").

The second reason the ALJ supplied for giving less weight to Thomas's opinion was that it was not consistent with Brock's daily activities. As discussed above, evidence in the record demonstrates that Brock was working and otherwise physically active in 1997 and 1998. Brock also reported feeling "entirely well" in January 1999. Given this evidence, the ALJ's second reason for disregarding Thomas's opinion was also legitimate.

Finally, the ALJ gave less weight to Dr. Thomas's diagnosis because her opinion was not supported by objective evidence, such as an EMG study that "revealed no definite evidence for cervical radiculopathy." Various x-rays, MRIs, and CT scans of Brock's back and neck failed to show that Brock suffered from a significant back or neck injury. AR 25, 145, 146. No scans or x-rays revealed otherwise. In addition, as non-examining psychiatrist Singer noted, there are no psychiatric or mental health treatment notes to confirm Dr. Thomas's retrospective diagnosis of a severe mental impairment. AR 545-47. Thus, as found by the ALJ, Thomas's assertion that Brock suffered from debilitating physical injuries and mental impairments in 1998 runs counter to the objective medical evidence in the record. This too was a legitimate reason to discount Thomas's diagnosis. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (holding that the ALJ provided a "specific and

legitimate reason" for rejecting the opinion of a treating physician when he cited the fact that the physician's opinion "did not mesh with [the claimant's] objective data or history").

In sum, substantial evidence supports the ALJ's specific and legitimate reasons for discounting the retrospective diagnosis of Brock's treating physician, Dr. Thomas. Those reasons included inconsistencies between the diagnosis and Thomas's contemporaneous notes, inconsistencies between the diagnosis and Brock's daily activities, and a lack of corroborating objective evidence.

### c. ALJ's Consideration of the Entire Record

In his final argument, Brock asserts that the ALJ failed to consider the entire record. In particular, Brock maintains that the ALJ improperly disregarded the opinions of Brock's four lay witnesses.

Brock's argument is without merit. With respect to the lay witnesses, the ALJ first noted that their testimony was "consistent with claimant's allegations." AR 24. He then explained that he was giving "less weight" to the third party statements for the same reasons he discounted Brock's subjective testimony, namely "because [the statements were] inconsistent with claimant's activities and . . . not supported by corroborative objective findings." AR 27. The ALJ therefore clearly considered the statements of Brock's lay witnesses and provided clear and convincing reasons for disregarding them.

In reaching his decision to deny benefits, the ALJ also considered Brock's voluminous medical history, the opinion of his treating physician, Brock's testimony at the hearing, and the testimony of non-examining physicians Coleman and Singer. The Court therefore finds that the ALJ fulfilled his duty to consider the entire record.

### d. Summary

The Court finds that substantial evidence supports the ALJ's decision denying Brock's disability claim. That evidence includes objective medical reports which indicate that Brock's back, neck and arm injuries were not severe, the absence of objective medical evidence indicating otherwise, Brock's reports that he continued to work and perform other physical activities during the mid- and late-1990s, Brock's statements that he felt well during

the relevant period, Brock's conservative treatment, and non-examining physicians Coleman's and Singer's opinions that Brock did not have a severe disability on December 31, 1998. This and the other evidence cited by the ALJ also provided clear and convincing reasons to discount Brock's subjective symptom testimony and the opinion of Brock's treating physician, Dr. Beverly Thomas.

### 4. Conclusion

The Court is mindful that Plaintiff Brock suffers from a number of medical impairments and that the severity of those impairments has worsened over time. If this Court was evaluating Brock's condition as of today, it might very well reverse a denial of benefits. The issue in this case, however, is whether substantial evidence supports the ALJ's conclusion that Brock was not disabled on or before December 31, 1998. For the reasons explained above, the Court finds that it does. Accordingly, the Commissioner's motion for summary judgment is GRANTED, and Plaintiff's is DENIED.

**IT IS SO ORDERED.**

Dated: March 23, 2010

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE